IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DARRYL SIMMONS,                    *

    Plaintiff,                 *

v.                                 *     Civil Action No. BPG-10-2135

COMMISSIONER,                      *
Social Security,
                                   *
    Defendant.                 *

*    *    *    *    *    *    *    *    *    *    *    *    *

MEMORANDUM

    Plaintiff, Darryl Simmons, brought this action pursuant to
42 U.S.C. § 405(g) for review of the final decision of the
Commissioner denying his application for a period of disability
and disability insurance benefits ("DIB") under Title II of the
Social Security Act, 42 U.S.C. §§ 401 et seq.  Currently pending
is defendant's Motion for Summary Judgment. (ECF No. 16.)  This
motion has been referred to the undersigned with the parties'
consent, pursuant to 28 U.S.C. § 636 and Local Rule 301.  No
hearing is deemed necessary.  Loc. R. 105.6.  For the reasons
discussed below, defendant's Motion for Summary Judgment (ECF No.
16) will be GRANTED.

I.    **Background**

    Plaintiff filed a claim for a period of disability and DIB
on January 8, 2008, alleging that he became disabled on August 1,
2005 as a result of, inter alia, pain in his back, right hip, and

right knee, obesity, and sleep apnea. (R. at 128-30, 155.)
After his application was denied initially (R. at 49, 51-54), and
upon reconsideration (R. at 77-80, 83-83), plaintiff appeared for
a hearing before Administrative Law Judge ("ALJ") Judith A.
Showalter on May 20, 2009 (R. at 29-72). Plaintiff was
represented at the hearing by Jamie Batson, Esq. (R. at 25.)
Also testifying was a qualified vocational expert ("VE"). (R. at
69-72.) In a decision dated August 27, 2009, ALJ Showalter
concluded that plaintiff is not disabled under the relevant
sections of the Social Security Act and, accordingly, denied his
application for benefits. (R. at 11-28.)

On June 4, 2010, the Appeals Council held that there was no
basis for granting review of the ALJ's decision. (R. at 1-5.)
On August 3, 2010, plaintiff, proceeding pro se, petitioned this
court for review of the ALJ's decision. (ECF No. 1.) The
Commissioner filed the instant Motion for Summary Judgment on
February 24, 2011, to which no opposition has been filed.[1] (ECF
No. 16.)

## II. **Standard of Review**

The role of this court on review is to determine whether the

---

[1] The Clerk sent plaintiff a letter on February 14, 2011,
notifying him of the pendency of the Commissioner's motion and of
his right to respond. (ECF No. 17.) When no response was filed,
a letter was sent to plaintiff from the undersigned's chambers,
encouraging him to respond to the Commissioner's motion and
providing him with additional time to do so. (ECF No. 18.) To
date, however, no response has been filed.

ALJ applied correct legal standards and whether substantial evidence supports the ALJ's decision.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  Substantial evidence is that which "a reasoning mind would accept as sufficient to support a particular conclusion."  Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966); accord Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001).  It is more than a scintilla but less than a preponderance of the evidence.  Id.  It is evidence sufficient to justify a refusal to direct a verdict if the case were before a jury.  Hays, 907 F.2d at 1456.  In reviewing for substantial evidence, the court does not weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the ALJ.  Id.

The Commissioner has promulgated regulations that set forth the following five-step analysis that an ALJ must follow in determining whether a claimant is disabled:

(1) The ALJ determines whether the claimant is engaged in substantial gainful activity as defined in 20 C.F.R. § 404.1571 and § 416.971 et seq.  If so, the claimant is not disabled.

(2) If not, the ALJ examines the physical and/or mental impairments alleged by the claimant and determines whether these impairments meet the durational and severity requirements set forth in 20 C.F.R. § 404.1520 and § 416.920.  If not, the claimant is not disabled.

(3) If so, the ALJ considers whether the impairment or impairments, either severally or in combination, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P,

Appendix 1, known as the Listing of Impairments ("Listings").  If so, the claimant is disabled.

(4) If not, the ALJ considers whether the claimant retains the residual functional capacity ("RFC") to do past relevant work ("PRW").  If so, the claimant is not disabled.

(5) If not, the ALJ determines whether the claimant is capable of some other work based on the claimant's RFC, age, education, and past work experience.  The Commissioner bears the burden of proof at step five.  Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).  If the claimant is not capable of other work, the claimant is disabled.

See 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).

## III. Discussion

The ALJ analyzed plaintiff's claim pursuant to the requisite five-step sequential analysis.  While no specific allegations of error were identified in plaintiff's pro se complaint, the court has reviewed the ALJ's decision and the arguments raised in the Commissioner's motion and concludes, for reasons that follow, that the Commissioner's final decision is supported by substantial evidence and should be affirmed.

### A. Step One:  Substantial Gainful Activity

At step one of the sequential analysis, the ALJ determined that plaintiff has not engaged in substantial gainful activity since his alleged August 1, 2005 onset date.  (R. at 13.)  The ALJ noted that plaintiff worked after his alleged onset date but that his monthly earnings averaged less than the amount indicative of substantial gainful activity as defined in the

regulations.  (Id. (citing 20 CFR § 404.1571 et seq.).)  The
court finds that the ALJ's conclusion at step one is supported by
substantial evidence.

### B. Step Two:  Severity of Impairments

At step two, the ALJ considered the medical evidence of
record to determine whether plaintiff has a medically severe
impairment or combination of impairments.  See 20 C.F.R. §
404.1520(a)(4)(ii), (c).  The ALJ determined that plaintiff's
degenerative disc disease, osteoarthritis of the right knee, and
obesity were "severe" impairments.  (R. at 14-17.)   The ALJ
further found that plaintiff's carpal tunnel syndrome, arthritis
of the hips, sleep apnea, arthritis the left shoulder, and
depression were non-severe impairments.  (R. at 17- 21.)

An impairment is considered severe if it "significantly
limits [an individual's] physical or mental ability to do basic
work activities" such as walking or lifting for a continuous
period of at least 12 months.  20 C.F.R. §§ 404.1509,
404.1520(c), 404.1521(b).  An impairment is not considered
severe, however, "if it is a slight abnormality which has such a
minimal effect on the individual that it would not be expected to
interfere with the individual's ability to work."  Evans v.
Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984).

The ALJ first considered plaintiff's degenerative disc
disease, noting his March 2005 MRI, which revealed "multi-level

moderate to moderately severe tricompartmental stenosis . . . due to congenital and acquired factors, a superimposed right extraforiminal disc protrusion at L2-L3, which abutted the exiting L2 nerve root on the right, and decreased marrow signal throughout the lumbar spine." (R. at 14 (citing R. at 216).) The ALJ reviewed plaintiff's treatment history, beginning in August 2005 through April 2009, discussing his physicians' notes, his reports of pain, and his treatment with various pain medications, epidural injections, physical therapy, and a TENS unit.[2] (R. at 14-15.) The ALJ concluded that plaintiff's degenerative disc disease was a severe impairment.

The ALJ also determined that plaintiff's osteoarthritis of the right knee was a severe impairment. The ALJ discussed the treatment history of plaintiff's right knee pain, beginning in December 2001 through August 2009, including plaintiff complaints of pain and treatment with medication and injections, noting Dr. Lohr's[3] diagnosis in August 2005 of "advanced osteoarthritis of the right knee." (R. at 15-16.)

---

[2] A TENS ("transcutaneous electrical nerve stimulation") unit is a small, battery-operated device hooked to a belt and connected to electrodes that delivers low voltage electric current to the skin to relieve lower back pain. http://www.webmd.com/back-pain/guide/tens-for-back-pain.

[3] Dr. Frederick Lohr is an orthopedic surgeon who performed arthroscopic surgery on plaintiff's right knee in 1991 and began treating plaintiff again in 2001 for knee, hip, back, and shoulder problems. (R. at 276, 252-75.)

The ALJ also addressed plaintiff's obesity, noting that SSR 02-1p provides that obesity is a factor in determining whether a claimant's impairments are severe, whether those impairments meet or equal a listing, and in assessing a claimant's residual functional capacity. (R. at 16-17 (citing SSR 02-1p, 2000 WL 628049 (S.S.A.).) With respect to the definition of obesity, SSR 02-1p references the National Institutes of Health ("NIH") guidelines, which classify a Body Mass Index ("BMI") of 30.0 or above as "obesity." 2000 WL 628049, at *2. The ALJ cited plaintiff's testimony at the May 20, 2009 hearing that he is six feet one inches tall and weighs 475 pounds, giving him a BMI of 62.7, and concluded that plaintiff is obese. (R. at 17.)

With respect to plaintiff's carpal tunnel syndrome, the ALJ noted plaintiff's reports of numbness and tingling in his hands to Dr. Lohr in July 2007 and March 2008 and increased hand and wrist pain in January 2009, his positive Tinel's and Phalen's test[4] bilaterally in April 2009, as well as plaintiff's testimony that "[h]e can close buttons and zip zippers, hold utensils, hold a pen and a cup, open car doors and door knobs . . . [and] is able to hold a steering wheel, but his hands bother him when he sleeps." (R. at 17.) The ALJ concluded, however, that

---

[4] A Tinel's sign test and Phalen's sign test are two tests commonly used by physicians to diagnose carpal tunnel syndrome. http://www.webmd.com/pain-management/carpal-tunnel/physical-exam-for-carpal-tunnel-syndromesse.

plaintiff's carpal tunnel syndrome was not a severe impairment because it did not satisfy the durational requirement of lasting or being expected to last for a continuous period of 12 months. (R. at 17-18 (citing 20 C.F.R. § 404.1509).) Notwithstanding plaintiff's self-reports of numbness in his hands as early as 2007, "no objective evidence of carpal tunnel syndrome was identified until his positive Tinel's and Phalen's test in April, 2009"—one month before the hearing and four months before the ALJ's decision. (R. at 17.) See 20 C.F.R. § 404.1508 (impairment cannot be established by claimant's statement of symptoms alone but must be demonstrated "by medical evidence consisting of signs, symptoms, and laboratory findings").

The ALJ next considered plaintiff's arthritis of the hips. The ALJ found plaintiff's right hip pain to be non-severe based on the medical record, which revealed only "intermittent periods of pain flares" beginning in March 2005, and plaintiff's testimony that he takes ibuprofen to manage his hip pain and "experiences no pain with his medications." (R. at 18.) See Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) (symptom not disabling if it can be reasonably controlled by medication). As for plaintiff's left hip pain, the ALJ determined it was non-severe because it did not meet the durational requirement in 20 CFR § 404.1509, as plaintiff did not report pain in his left hip until December 2008—five months before the hearing and eight

months before the ALJ's decision.  (R. at 18 (citing R. at 304–05).)

The ALJ noted that plaintiff's arthritis of the left shoulder was aggravated after plaintiff injured it lifting a bucket of water in March 2005.  (R. at 18.)  The ALJ reviewed Dr. Lohr's report in March 2008 that plaintiff's x-rays "revealed some acromioclavicular joint changes, which appeared chronic and arthritic," as well as Dr. Callahan's[5] report in May 2008 that a cortisone injection administered by Dr. Lohr had successfully alleviated plaintiff's shoulder pain.  (R. at 19.)  The ALJ concluded that, since plaintiff had not sought further treatment for shoulder arthritis following the March 2008 treatment with Dr. Lohr, it was non-severe.  (Id.)  The ALJ noted, however, that she accounted for plaintiff's subjective complaints of left shoulder pain when formulating his RFC.  (Id.)

The ALJ next reviewed the medical record of plaintiff's sleep apnea.  (Id. (citing R. at 195–97).)  The ALJ noted that plaintiff was referred for a sleep study by Dr. Trainor[6] in February 2007 after reporting that he "wakes up gasping for breath sometimes," snores, occasionally stops breathing when

_____

[5] Dr. Patrick Callahan is a pain management specialist who began treating plaintiff for back and right hip pain in September 2005.  (R. at 239.)

[6] Dr. William Trainor began treating plaintiff for sleep problems in February 2007.  (R. at 196.)

sleeping, and experiences drowsiness during the day, sometimes
while driving. (R. at 19.) Plaintiff's April 2007 sleep study
revealed "severe obstructive sleep apnea."[7] (Id.) The ALJ also
observed that, in July 2007, plaintiff underwent a CPAP titration
study,[8] which indicated that plaintiff's apnea was eliminated at
a pressure level of 16 to 17 cm of water. (Id. (citing R. at
228).) The ALJ noted Dr. Trainor's report that if the CPAP
treatment was not tolerable, plaintiff might require an
alternative treatment, known as Bi-PAP.[9] (R. at 19.) The ALJ
also considered plaintiff's testimony that "he uses a CPAP
machine but it does not help" and that he "sleeps 8 hours a night
but constantly naps during the day." (Id.) The ALJ concluded
that plaintiff's sleep apnea was not severe because, while he
experiences difficulty with the CPAP treatment, he has not

---

[7] Obstructive sleep apnea is caused by the "collapse or
obstruction of the airway with the inhibition of muscle tone that
occurs during REM sleep." Dorland's Medical Dictionary 118 (31st
ed. 2007).

[8] A CPAP (Continuous Positive Airway Pressure) titration
study is a "sleep apnea treatment that involves the delivery of
air into the airways through a specially designed nasal mask."
http://www.webmd.com/sleep-disorders/polysomnogram. After the
patient is diagnosed with sleep apnea, the study is conducted "to
determine the necessary CPAP pressure required to alleviate
apnea." Id.

[9] A bi-level positive airway pressure (BiPAP) machine is an
alternative to a CPAP machine for treating sleep apnea.
http://www.webmd.com/sleep-disorders/sleep-apnea/continuous-
positive-airway-pressure-cpap-for-obstructive-sleep-apnea. A
BiPAP machine "uses different air pressure when you breathe in
than when you breathe out." Id.

pursued other treatment options. (Id.)

Finally, the ALJ determined that plaintiff's depression was not supported by objective evidence. (R. at 19-21.) The ALJ noted Dr. Callahan's December 2006 report that plaintiff's mood was "ok," Dr. Lohr's report in August 2007 that plaintiff had no psychiatric illness,[10] and Dr. Lohr's observation in December 2008 that plaintiff had "no apparent mood disorder." (R. at 19-20 (citing R. at 253, 304, 306).) The ALJ considered plaintiff's testimony that he is depressed, but noted plaintiff's admission that he did not seek treatment for depression and has never taken any mental health medications. (R. at 20.) The ALJ also applied the "special technique" for evaluating the severity of a mental impairment by considering plaintiff's limitations in "four broad functional areas." (R. at 20-21 (citing Part 404, Subpart P, Appendix 1, 12.00C).) The ALJ found that plaintiff was only "mildly" limited in his activities of daily living, social functioning, and concentration, citing plaintiff's testimony in support of his specific findings as to the degree of limitation in each functional area, and further observed that plaintiff has experienced no episodes of decompensation[11] of extended duration.

---

[10] The record reflects that Dr. Lohr reported no psychiatric illness in March 2008 as well. (R. at 253.)

[11] "Episodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing

(R. at 20-21 (citing 20 C.F.R. § 404.1520a(d)(1)).)

In sum, substantial evidence supports the ALJ's conclusions regarding the severity of plaintiff's impairments at step two.

## C. **Step Three:  Listings**

At step three, the ALJ determined that plaintiff's impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings").  (R. at 21.)  The ALJ specifically considered the Listings for musculoskeletal disorders set out in Section 1.00, observing that "no physician has mentioned any findings equivalent in severity to any listed impairment, nor are such findings indicated or suggested by the record."  (Id.)

The court finds that the ALJ's discussion of the medical record at step two of her decision supports her conclusion that plaintiff's impairments do not meet or medically equal a Listing. See Schoofield v. Barnhart, 220 F. Supp. 2d 512, 522 (D. Md. 2002) (ALJ's decision will be upheld "where it is clear from the record which listing[s] . . . were considered, and there is elsewhere in the ALJ's opinion an equivalent discussion of the medical evidence relevant to the Step Three analysis").  The court observes, for example, that the evidence of record does not support a finding that plaintiff is unable to ambulate

_____

activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace."  20 C.F.R. Part 404, Subpart P, Appendix 1, 1.00Q.

effectively,[12] as required to meet Listing 1.02 (major

dysfunction of a joint) or Listing 1.04 (disorders of the spine).

In short, the ALJ's conclusion at step three is supported by

substantial evidence.

## D. **RFC Assessment**

Prior to her step four and step five determination, the ALJ

concluded that plaintiff retains the RFC to:

> perform simple unskilled light work as defined in 20 CFR
> 404.1567(b) except that he could lift 20 pounds
> occasionally, 10 pounds frequently, stand or walk for 6
> hours in an 8 hour day, sit for 6 hours in an 8 hour day,
> occasionally climbing a ramp or stairs, balancing,
> stooping, kneeling, crouching and crawling but no
> climbing of a ladder, rope or scaffold, and avoiding
> overhead working with the left upper extremity.

(R. at 21-26.)  The determination of RFC is an assessment "based

on all the relevant evidence," of what work-related activities a

claimant can still do despite their limitations.  20 C.F.R. §

404.1545.  It "must include a narrative discussion describing how

the evidence supports each conclusion, citing specific medical

facts (e.g., laboratory findings) and nonmedical evidence (e.g.,

daily activities, observations)."  SSR 96-8p; 1996 WL 374184 at

*7 (S.S.A.); see also Walker v. Bowen, 889 F.2d 47, 50 (4th Cir.

---

[12] The "inability to ambulate effectively" is defined by the
regulations as "an extreme limitation of the ability to walk;
i.e., in impairment(s) that interferes very seriously with the
individual's ability to independently initiate, sustain, or
complete activities.  20 C.F.R. Part 404, Subpart P, Appendix 1,
1.00B2b(1).

1989) (ALJ must evaluate effect of all plaintiff's impairments and adequately explain his or her RFC findings).

As part of the RFC assessment, the ALJ must evaluate a claimant's credibility as it relates to their subjective complaints of pain or other symptoms caused by their impairments following a two-step process.  See 20 C.F.R. § 404.1545(a)(3); Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996).  First, the ALJ must determine whether there is objective evidence showing the existence of a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged.  Craig, 76 F.3d at 594.  Second, the ALJ must evaluate the intensity and persistence of the claimant's pain or other symptoms alleged based on all the evidence in the record, including the claimant's testimony, and determine the extent to which it limits the claimant's ability to work.[13]  Id. at 595.

Here, the ALJ determined that while plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," his "statements concerning the intensity, persistence and limiting effects of these symptoms are not

---

[13] Factors to be considered in assessing credibility at step two include:  (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain or other symptoms; (3) precipitating or aggravating factors; (4) the type, dosage, effectiveness, and side effects of medication; (5) treatments and other measures taken for relief; and (6) other factors concerning functional limitations and restrictions.  20 C.F.R. § 404.1529(c)(3).

credible to the extent they are inconsistent with" plaintiff's RFC. (R. at 24.) The ALJ cited to specific evidence of record in support of this conclusion regarding plaintiff's credibility.

The ALJ first noted plaintiff's testimony that he experiences no pain with his medications, as well as Dr. Callahan's report that injections were effective in ameliorating plaintiff's knee pain. (R. at 22.) If a symptom is "reasonably controlled" with medication or treatment, it is not disabling. Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986).

The ALJ next considered plaintiff's testimony that he can walk less than one hour, stand for 30 to 45 minutes, sit for one hour, can lift up to 5 pounds, and is unable to climb stairs. (R. at 23.) The ALJ noted that, while he afforded less than full weight to Dr. Callahan's assessment of plaintiff's exertional limitations, Dr. Callahan determined that plaintiff can lift up to twenty pounds occasionally and ten pounds frequently. (Id.) Since plaintiff's assessment of his own limitations was more restrictive than that of his treating physician, the ALJ concluded that plaintiff is "self limiting his functional abilities." (Id.)

The ALJ also considered plaintiff's work history, observing that plaintiff's "earnings record suggests that he was involved in more activities than the two he revealed in his testimony," undermining plaintiff's credibility regarding his functional

limitations.  (R. at 23-24.)  Further, the ALJ noted that
plaintiff's testimony that his medication causes drowsiness and
fatigue is inconsistent with Dr. Callahan's treatment notes,
which indicate, as recently as December 2008, that plaintiff
experienced no side effects from his medication.  (R. at 24
(citing R. at 306).)

The ALJ also considered the medical opinions of record in
assessing plaintiff's RFC.  (R. at 24-26.)  A treating
physician's opinion as to the existence, nature, or severity of a
claimant's impairment is generally entitled to controlling weight
if it is "well-supported by medically acceptable clinical and
laboratory diagnostic techniques and is not inconsistent" with
other substantial evidence.  20 C.F.R. § 404.1527(d)(2).  A
treating physician's medical opinion should be given
"significantly less weight," however, if it is not supported by
clinical evidence or is inconsistent with other substantial
evidence.  Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996).

A statement from a medical source that a claimant is
"disabled" or "unable to work," is not a medical opinion, but a
dispositive administrative finding that is reserved to the ALJ.
See 20 C.F.R. § 404.1527(e).  While opinions from a treating
source on issues reserved to the Commissioner are not entitled to
controlling weight, the ALJ must nevertheless "evaluate all the
evidence in the case record to determine the extent to which the

16

opinion is supported by the record." SSR 96-5p, 1996 WL 374183,
at *2 (S.S.A.).

The ALJ considered Dr. Lohr's opinion that plaintiff is
"disabled," as he is permanently unable to perform his previous
job as a correctional officer at a juvenile detention center,
which involved physically restraining adolescent males. (R. at
25 (citing R. at 259).) The ALJ observed that the issue of
whether a claimant is disabled is an administrative finding
reserved to the Commissioner but found, however, that Dr. Lohr's
opinion was consistent with her finding at step four that
plaintiff is unable to perform past relevant work. (R. at 25
(citing SSR 96-5p).) Accordingly, the ALJ afforded it "some
weight." (R. at 25.)

The ALJ next assigned "little weight" to three prior
opinions by state agency consultative physicians that there was
insufficient evidence to make a disability determination,
concluding that "[t]he medical record as a whole reveals that
[plaintiff's] severe impairments include degenerative disc
disease, osteoarthritis of the right knee, and obesity." (Id.
(citing R. at 251, 300, 301).) The court sees no error in the
ALJ's conclusion and finds that plaintiff's 144-paged medical
record was complete enough to allow the ALJ to make a
determination about the nature and duration of plaintiff's
impairments, their effects, and plaintiff's RFC based upon

17

substantial evidence.  See 20 C.F.R. § 404.1513(e).

The ALJ also considered the August 2005 opinion of Dr.
Curtis Nelson[14] that plaintiff is totally disabled as a result of
a back injury plaintiff suffered breaking up a fight while
working at the juvenile detention center.  (R. at 25 (citing R.
at 243).)  Consistent with SSR 96-5p, the ALJ considered the
supportability of Dr. Nelson's opinion with the medical evidence
of record and ultimately afforded it "little weight." (Id.)
Specifically, the ALJ discussed Dr. Nelson's limited treatment
relationship with plaintiff, noting that Dr. Nelson formed his
opinion shortly after plaintiff's injury and "provided no
additional care to [plaintiff] following his initial treatment."
 (R. at 25.)  The ALJ also observed that Dr. Nelson's opinion was
inconsistent with the medical record, which indicates that
plaintiff's pain is managed with medication and that plaintiff
has engaged in a series of jobs since the August 2005 injury on
which Dr. Nelson's disability determination was based.   (Id.)

The ALJ next considered Dr. Callahan's November 2005
progress note that plaintiff "should remain out of work until
January 20, 2006." (R. at 26 (citing R. at 289).)  The ALJ
reasoned that this "work limitation appears to have been provided
to allow plaintiff to recuperate after he stopped physical

───────────────

[14] Dr. Nelson is a neurosurgeon who treated plaintiff for
lower back pain in August 2005 following plaintiff's injury. (R.
at 242-43.)

18

therapy," which Dr. Callahan recommended that plaintiff resume. (R. at 26.)  Observing that the medical record did not support a conclusion that Dr. Callahan intended to permanently limit plaintiff from all work, the ALJ assigned this opinion "little weight."  (Id.)

The ALJ also considered Dr. Callahan's opinion as to plaintiff's functional limitations and afforded it "some weight."[15]  (Id. (citing R. at 297-99).)  The ALJ credited part of Dr. Callahan's assessment but found that Dr. Callahan's conclusion that plaintiff could only sit for 2 hours and stand or walk for 4 hours in an 8 hour day, was limited in his ability to push and pull with his lower extremities, and could never perform any postural activities was unsupported by the medical record as a whole.  (R. at 26.)  The ALJ noted that Dr. Callahan's opinion was based on a March 2005 MRI of plaintiff's lumbar spine revealing a herniated disc.  (Id. (citing R. at 216).)  The ALJ observed, and the record reveals, however, that Dr. Callahan's conclusion is inconsistent with Dr. Nelson's August 2005 review of the same MRI, in which Dr. Nelson found "no evidence of herniated discs."  (Id.; see R. at 243.)  The ALJ further observed that Dr. Callahan's conclusion is undermined by the fact that plaintiff has had "good results from cortisone injections in his

---

[15] Dr. Callahan completed a Medical Assessment of Ability to Do Work Related Activities (Physical) for plaintiff on May 9, 2008.  (R. at 297-99.)

knees and shoulder." (R. at 26.)

In reaching her RFC determination, the ALJ explained that simple unskilled work was assigned to account for plaintiff's complaints of medication side effects, pain, and memory impairment; postural limitations were included to account for plaintiff's pain, medication side effects, and degenerative disc disease, osteoarthritis, and obesity; and overhead lifting was limited to account for plaintiff's shoulder arthritis. (R. at 24.) The ALJ also noted that she considered the effects of plaintiff's obesity on his co-existing impairments as well as his ability to sustain activity during a regular eight-hour workday in formulating plaintiff's RFC, consistent with SSR 02-1p, 2000 WL 628049 (S.S.A.). (Id.) That reference, coupled with the ALJ's repeated references to plaintiff's obesity elsewhere in the decision, provides substantial evidence to support the ALJ's statement that she accounted for plaintiff's obesity in formulating his RFC.

In sum, the ALJ's assessment as to plaintiff's RFC is supported by substantial evidence in the record.

### E. Step Four:  Past Relevant Work

At step four, the ALJ considered the VE's testimony describing plaintiff's past relevant work as a forklift operator, corrections supervisor, industrial cleaner, heavy equipment operator, construction worker, or van driver, as well as the

vocational requirements of each occupation.  (R. at 26.)  The ALJ

found that each occupation exceeded plaintiff's RFC and,

accordingly, concluded that plaintiff is unable to perform past

relevant work.  (Id.)  Substantial evidence supports this

conclusion.

### F. Step Five:  Other Work Existing in Significant Numbers

At step five, the ALJ consulted the VE to determine whether,

based on plaintiff's RFC, age, education, and past work

experience, plaintiff is capable of performing other work that

exists in significant numbers in the national economy.  (R. at

27-28.)  In response to a hypothetical question from the ALJ,

which adequately reflected plaintiff's impairments, the VE

testified that plaintiff is capable of performing the following

"light" jobs:  final inspector (1,200 locally, 190,300

nationally) general inspector (2,060 locally, 204,100

nationally), and assembler (1,860 locally, 198,500 nationally),

as well as the following "sedentary" jobs:  system surveillance

monitor (1,800 locally, 181,300 nationally), bench hand (1,020

locally, 182,800 nationally), and dial maker (1,050 locally,

111,300 nationally).[16]  (R. at 27.)  Accordingly, the ALJ

---

[16] The regulations discussing physical exertion requirements
define "light" work as involving "lifting no more than 20 pounds
at a time with frequent lifting or carrying of objects weighing
up to 10 pounds."  20 C.F.R. § 404.1567(b).  "Sedentary" work, on
the other hand, "involves lifting no more than 10 pounds at a
time and occasionally lifting or carrying articles like docket
files, ledgers, and small tools." § 404.1567(a).

concluded that plaintiff is not disabled.  (R. at 28.)

The court finds that the ALJ's hypothetical "fairly set out" all of plaintiff's impairments and resulting limitations, <u>Walker v. Bowen</u>, 889 F.2d 47, 50 (4th Cir. 1989) and produced a sufficient number of jobs that were consistent with these limitations to support her conclusion that plaintiff is capable of performing other work that exists in the national economy, <u>see Hicks v. Califano</u>, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979) (declining to conclude that 110 jobs is an insignificant number).  Accordingly, the ALJ's conclusion at step five that plaintiff is not disabled is supported by substantial evidence.

**IV.  <u>Conclusion</u>**

For the foregoing reasons, the court grants defendant's Motion for Summary Judgment. (ECF No. 16.)  A separate Order shall issue.

Date: _08/30/11_        _____/s/_____

                                   Beth P. Gesner
                                   United States Magistrate Judge